UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SANDRA WILSON,

Plaintiff,

v.

NATIONAL GRID USA SERVICE COMPANY, INC., and
NIAGARA MOHAWK POWER CORP.,

Defendants.

Civil Action No.
1:16-cv-01486-MAD-DJS

**MEMORANDUM OF LAW IN SUPPORT OF
THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

BOND, SCHOENECK & KING, PLLC
Attorneys for Defendants
Office and P.O. Address
One Lincoln Center
Syracuse, New York  13202-1355
Telephone:  (315) 218-8000

Of Counsel:
  Robert A. LaBerge, Esq.
  Kseniya Premo, Esq.

## TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ................................................................. 1

II.  FACTUAL BACKGROUND ................................................................... 4

    A.  Background Relating to the Gas Operations Department and Ms. Wilson's Prior and Current Employment ............................................ 4

    B.  The Duties and Responsibilities of Chief Gas Mechanics.......................... 4

    C.  The January 22, 2015, Incident and the Company's Subsequent Investigation and Senior Management's Decision to Suspend and Demote Ms. Wilson Because of the Incident............................................... 5

    D.  Ms. Wilson's Return to the Chief Gas Mechanic Position in February 2016 ........................................................................................ 6

    E.  Ms. Wilson's Discrimination Charge and the EEOC Investigation and Dismissal of Her Discrimination, Harassment, and Retaliation Allegations .......................................................................................... 6

    F.  The Neutral Arbitrator's Finding that the Decision to Suspend and Demote Ms. Wilson Because of the January 22, 2015 Incident Was Supported by "Just Cause".......................................................................... 7

III.  ARGUMENT ..................................................................................... 8

    POINT I -  PLAINTIFF CANNOT ESTABLISH HER DISPARATE TREATMENT AND RETALIATION CLAIMS ............................................ 8

    A.  Besides the February 2015 Suspension and Demotion, the Employment Actions Complained by Ms. Wilson Do Not Constitute Adverse Employment Actions as a Matter of Law. ................. 9

    B.  Arbitrator's Decision Finding "Just Cause" for Ms. Wilson's February 2015 Discipline Prevents Ms. Wilson from Establishing Even a Prima Facie case of Either Discrimination or Retaliation ............ 10

    C.  The Defendants' Preferred Legitimate Nonsdiscriminatory Reasons for the February 2015 Discipline ............................................................. 12

    D.  Ms. Wilson Cannot Show Pretext ........................................................... 13

    POINT II -  PLAINTIFF CANNOT ESTABLISH AN ACTIONABLE HOSTILE WORK ENVIRONMENT CLAIM......................................................... 18

    A.  Ms. Wilson Cannot Show that the Complained of Conduct Was Sufficiently Sever or Pervasive to Alter the Conditions of Her Employment............................................................................................ 19

    B.  There Is No Basis to Impute the Alleged Harassing Conduct to the Company ............................................................................................ 22

IV.     CONCLUSION ........................................................................................................ 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alfano v. Costello,*
  294 F.3d 365 (2d Cir. 2002)..........................................................................................16, 18

*Anderson v. Nat'l Grid, PLC,*
  93 F.Supp.3d 120 (E.D.N.Y. 2015) ..........................................................................13

*Brennan v. Metro. Opera Ass'n, Inc.,*
  192 F.3d 310 (2d Cir. 1999)........................................................................................19, 20

*Brown v. Middaugh,*
  41 F. Supp. 2d 172 (N.D.N.Y. 1999) ........................................................................21

*Carlton v. Mystic Transp., Inc.,*
  202 F.3d 129 (2d Cir. 2000)........................................................................................16

*Collins v. City Trans. Auth.,*
  305 F.3d 113 (2d Cir. 2002)........................................................................................10, 11

*Collins v. N.Y. City Transit Auth.,*
  305 F.3d 113-119 (2d Cir. 2002) ..............................................................................3, 10, 12

*DiFillippo v. Special Metals Corp.,*
  2016 U.S. Dist. LEXIS 119771 (N.D.N.Y. 2016) ............................................*passim*

*Droutman v. NY Blood Ctr., Inc.,*
  2005 U.S. Dist LEXIS 42951 (E.D.N.Y. 2005)........................................................18

*Francis v. Runyon,*
  928 F. Supp. 195 (E.D.N.Y. 1996) ............................................................................18

*Gordon v. NYC Bd. of Educ.,*
  232 F.3d 111 (2d Cir. 2000)........................................................................................8

*Harris v. Forklift Sys., Inc.,*
  510 U.S. 17 (1993)........................................................................................................19

*Holt v. Roadway Package Sys., Inc.,*
  506 F. Supp. 2d 194 (W.D.N.Y. 2007) ....................................................................21

*Joseph v. Leavitt,*
  465 F.3d 87 (2d Cir. 2006)..........................................................................................9

*Kugler v. Donahoe,*
  2014 U.S. Dist. LEXIS 34588 (E.D.N.Y. 2014)........................................................11

*Mathirampuzha v. Potter,*
    548 F.3d 70 (2d Cir. 2008)...................................................................................20

*Matthew v. Corning Inc.,*
    77 F.Supp.3d 275 (W.D.N.Y. 2014)...................................................................20

*Mealus v. Nirvana Spring Water N.Y. Inc.,*
    2014 U.S. Dist. LEXIS 128968 (N.D.N.Y. 2014)...............................................20

*Miller v. Praxair, Inc.,*
    408 Fed. Appx. 408 (2d Cir. 2010)......................................................................9

*Norris v. N.Y. City Housing Auth.,*
    2004 U.S. Dist. LEXIS 8619 (S.D.N.Y. 2014)............................................10, 13

*Oncale v. Sundowner Offshore Servs., Inc.,*
    523 U.S. 75 (1998)..............................................................................................19

*Perry v. Ethan Allen, Inc.,*
    115 F.3d 143 (2d Cir. 1997)................................................................................19

*Redd v. New York State Div. of Parole,*
    923 F. Supp. 2d 371 (E.D.N.Y. 2012) ...............................................................11

*Ruiz v. County of Rockland,*
    609 F.3d 486 (2d Cir. 2010)................................................................................17

*Sardina v. United Parcel Service, Inc.,*
    254 Fed. Appx. 108 (2d Cir. 2007).....................................................................20

*Serrano v. New York State Dep't of Envtl. Conservation,*
    2017 U.S. Dist. LEXIS 47527 (N.D.N.Y 2017) ...........................................8, 20

*Shannon v. Nicholson,*
    2006 U.S. Dist. LEXIS 14253 (S.D.N.Y. 2006)...........................................17, 18

*Shumway v. United Parcel Serv., Inc.,*
    118 F.3d 60 (2d Cir. 1997)............................................................................13, 17

## I.    **PRELIMINARY STATEMENT**

Plaintiff Sandra Wilson ("Ms. Wilson") commenced this action on or about December 13, 2016, against her employer, Niagara Mohawk Power Corporation ("Niagara Mohawk" or the "Company") and an affiliated company, National Grid USA Service Company, Inc. (National Grid ServeCo") (collectively, the "Defendants"), under Title VII of the Civil Rights Act of 1964, *42 U.S.C. 2000e, et seq.* ("Title VII"), Section 1981 of the Civil Rights Act of 1866, *42 U.S.C. 1981* ("Section 1981"), and the New York Human Rights Law ("NYHRL").

In her complaint, Ms. Wilson asserts claims for race and gender discrimination, retaliation, and hostile work environment under each of these statutes. The parties have since completed discovery and the information made available through discovery clearly shows that Ms. Wilson cannot establish an actionable claim under any of these statutes. The Defendants accordingly move for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

Ms. Wilson cannot establish even a *prima facie* case of discrimination or retaliation because the undisputed record evidence shows that – apart from her February 2015 suspension and demotion – Ms. Wilson has not been subjected to any adverse employment action. In fact, during her deposition Ms. Wilson admitted that: (a) she has "consistently received satisfactory performance evaluations through the course of [her] employment." (Pl. Tr. 112); (b) she successfully completed various schools and progressed from Gas Mechanic Helper to Gas Mechanic A, Gas Mechanic B, and Gas Mechanic C, without any issues (Pl. Tr. 42-43); (c) she became Chief Gas Mechanic in Schenectady, New York in January 2014 (Pl. Tr. 49); (d) this was the first time Ms. Wilson bid into this position and she was awarded the position right away (Pl. Tr. 49-51); (e) the Chief Gas Mechanic position is the most senior position in the bargaining unit and is also the highest paid position. (Pl. Tr. 52; 111-112).

Ms. Wilson also cannot establish even a *prima facie* case of discrimination or retaliation as it concerns her suspension in demotion in February 2015 (over which she filed a grievance which was fully arbitrated) for the following reasons:

(1) On January 22, 2015, Ms. Wilson failed to perform a circle of safety inspection prior to moving her vehicle out of the garage, in violation of the Company's Safe Operations Policy. (Ackermann Aff. ¶14; Krogh Aff. ¶33). As a result, Ms. Wilson was not aware that two coworkers were still in the back of her truck when she pulled out of the garage. (Ackermann Aff. ¶14; Krogh Aff. ¶33).

(2) Ms. Wilson admitted that immediately after the incident she was approached by Duncan Haley, senior crew member, who informed her that "she almost killed two people." (Buck Aff. ¶¶12-13; Krogh Aff. ¶43). She further admitted that Mr. Haley advised her that she should go back to the barn to check on the wellbeing of the employees involved in this incident. *Id.* Ms. Wilson, however, did not do so. *Id.*

(3) Ms. Wilson admitted that she decided not go back to the barn because she was concerned that she would "lose her temper" with the employees in question. *Id.* Ms. Wilson further stated during her investigative interview that she is not a "babysitter." *Id.*

(4) The decision to suspend and demote Ms. Wilson for the January 22, 2015 incident was made by the Company's senior management, after thorough investigation, and was based on the senior management good faith belief that Ms. Wilson failed to fulfill her duties and responsibilities as a Chief Gas Mechanic by disregarding the established safety procedures and, more significantly, by failing to check on the employees whom she placed in harm's way and for whom she was responsible in her quasi-supervisory role. (Buck Aff. ¶23; Krogh Aff. ¶44; Ackermann Aff. ¶16); and

(5) Following a three day evidentiary hearing, a neutral arbitrator determined that the Company had "just cause" to discipline Ms. Wilson for violating the Company's Safe Operations Policy and for abrogating her duties and responsibilities as a Chief Gas Mechanic. (LaBerge Aff. ¶4, Ex. B).

In view of these undisputed facts, Ms. Wilson clearly cannot establish a *prima facie* case of disparate treatment or retaliation, or prove that the Company's stated reason for her discipline was a pretext for unlawful discrimination or retaliation.[1]

Ms. Wilson similarly cannot establish an actionable hostile work environment claim. In her Complaint Ms. Wilson makes a number of vague and conclusory allegations regarding hostile work environment. Ms. Wilson's deposition testimony, however, clearly shows that her hostile environment claim cannot withstand Defendants' motion for summary judgment because:

(1) Ms. Wilson admitted that while employed with the Company, she has never heard anyone using racially derogatory or offensive comments towards her (Pl. Tr. 139-140; 187-188);

(2) Similarly, she admitted that she has never heard anyone use racially derogatory or offensive comments toward any other employee of the Company (*Id*);

(3) The alleged statements (if any) were isolated and sporadic;

(4) The alleged statements (if any) were not reported by Ms. Wilson under the available policies and procedures (Wilson 147-153); and/or

(5) The alleged statements occurred, if at all, largely outside the applicable limitations periods (Wilson 177-188) and cannot be supported in this proceeding by competent and admissible evidence.

In light of the above, Ms. Wilson clearly cannot establish an actionable hostile work environment claim. The Defendants accordingly respectfully submit that they are entitled to summary judgment in this case and request the Court to issue an order dismissing Ms. Wilson's complaint in its entirety.

---

[1] *See, e.g., DiFillippo v. Special Metals Corp.*, 2016 Dist. LEXIS 119771, *14, n.1 (N.D.N.Y., 2016) (recognizing that the Second Circuit's *Collins* decision has been consistently followed and applied by [New York] district courts and that this "*Collins* defense may be viewed as either an attack on a [plaintiff's] showing of an inference of discrimination or retaliation in a *prima facie* case or as an attack on plaintiff's satisfaction of the subject requirement that a proffered disparate reason for an employment action be shown to be pre-textual") (*citing Collins v. N.Y. City Transit Auth.*, 305 F.3d 113-119 (2d Cir. 2002)).

## II.     FACTUAL BACKGROUND

The factual background relevant to Ms. Wilson's allegations in this case is simple, straightforward, and undisputed in all material respects and it is summarized succinctly below:[2]

### A.   Background Relating to the Gas Operations Department and Ms. Wilson's Prior and Current Employment

Niagara Mohawk is a regulated public utility and holds a franchise issued by the New York State Public Service Commission ("PSC") to provide gas transmission and distribution services in the Capital and Northeast Regions of New York State and Central New York State.

Ms. Wilson has worked for Niagara Mohawk continuously for over twenty-seven years. She is a member of the represented bargaining unit and her terms and conditions of employment are governed by Niagara Mohawk's collective bargaining agreement with Local 97 of the International Brotherhood of Electrical Workers, AFL-CIO ("the Union").

Since 2000, Ms. Wilson has worked in the Company's Gas Operations Department and has reported out of the department's facility on Broadway in Schenectady.  Ms. Wilson has advanced through each of the schools and levels of the Gas Mechanic job series, and reached the Gas Mechanic C, the highest position job in the progression series, all in due course while working in Schenectady.

### B.   The Duties and Responsibilities of Chief Gas Mechanics

At Niagara Mohawk, the Chief Gas Mechanic job is a quasi-supervisory and critical position because the Chief Gas Mechanics are responsible for directing the Company's gas crews and for ensuring their safe, reliable, competent, and compliant performance on the Company's natural gas pipelines.  To fulfill these responsibilities, Chief Gas Mechanics must adhere to the

---

[2] More detailed information concerning Ms. Wilson's employment history, current and prior job duties and responsibilities, terms and conditions of employment, and the policies and procedures applicable to her employment is provided in the affidavits filed in support of the Defendants' motion.

Company's work rules and policies and must be technically proficient and have the right communication skills, judgment, and temperament to serve as an effective team leader.

In January 2014, Ms. Wilson applied for a Chief Gas Mechanic position and she was awarded that job. Ms. Wilson has been working as a Chief Gas Mechanic for a little over a year when she was involved in a serious safety incident in the Schenectady facility.

### C. The January 22, 2015, Incident and the Company's Subsequent Investigation and Senior Management's Decision to Suspend and Demote Ms. Wilson Because of the Incident

On the morning of January 22, 2015, Ms. Wilson had pulled her crew truck out of the Schenectady barn while two co-workers were still working in the back of her truck. These employees were shaken up by this incident and complained to their Union steward who in turn reported this incident to a Gas Operations Department supervisor, who then reported it to the Department's Manager. The Gas Operations and Labor Relations Departments subsequently conducted an investigation into the incident during which nine employees, including Ms. Wilson, were interviewed.

During her interview, Ms. Wilson admitted that she had not performed a required "circle of safety" inspection before leaving the garage and that she was unaware that the employees were working in the back of her truck. She additionally admitted that she was approached by her senior crew member immediately following this incident, and was advised that "she almost killed two people" inside the facility. The senior crew member advised her to go back to the barn to check on these employees. Ms. Wilson admitted during the interview, however, that she chose to ignore this advice and decided instead to leave the facility without checking on the employees or reporting this incident to anyone. Ms. Wilson also admitted during her interview that she did not go back to the facility because she thought that she would "lose her temper" with these employees and she stated that she is not a "babysitter."

A report on the incident and the investigation was provided to a group of senior managers two days after completion of the employee interviews.  This senior management group, after considering the information gathered during the investigation, including Ms. Wilson's statements about her own actions and inactions during the incident, concluded that Ms. Wilson had violated important safety procedures and had failed to fulfill her leadership role and her duties and responsibilities as a Chief Gas Mechanic throughout the January 22, 2015 incident.  The senior management group believed that this was a serious matter and decided that it warranted suspending Ms. Wilson for three days and demoting her from the Chief Gas Mechanic role for one year.

### D.  Ms. Wilson's Return to the Chief Gas Mechanic Position in February 2016

When the one-year demotion period was expiring, Gas Operations Department management reviewed and discussed Ms. Wilson's recent performance and conduct in order to assess her ability to return to a Chief Gas Mechanic role. They agreed that Ms. Wilson had demonstrated sufficient improved performance and conduct to allow her return to serve in that capacity.  Shortly thereafter, Ms. Wilson was promoted to Chief Gas Mechanic position – i.e, the position she continues to hold today.

### E.  Ms. Wilson's Discrimination Charge and the EEOC Investigation and Dismissal of Her Discrimination, Harassment, and Retaliation Allegations

Before commencing this action, Ms. Wilson filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (the "EEOC").  The EEOC issued multiple requests for information to the Company as part of its investigation into Ms. Wilson's initial and amended allegations. The Company responded to each of those requests and the EEOC ultimately concluded its investigation into Ms. Wilson's discrimination, hostile work

environment and retaliation claims in September 2016.  On  September 14, 2016, the EEOC issued a determination indicating that there was insufficient evidence to support any of Ms. Wilson's discrimination or retaliation allegations in this case.

### F. The Neutral Arbitrator's Finding that the Decision to Suspend and Demote Ms. Wilson Because of the January 22, 2015 Incident Was Supported By "Just Cause"

During 2017, a neutral arbitrator conducted a full evidentiary proceeding hearing over three days.  The neutral arbitrator allowed examination and cross-examination of witnesses, introduction of documentary evidence and submission of post-hearing briefs during that evidentiary hearing.  After considering all of the evidence presented and arguments made during that proceeding, the arbitrator issued a comprehensive 36-page opinion and award in which he found that (a) Ms. Wilson violated the Company's established safety rules and failed to fulfill her duties and responsibilities as a Chief Mechanic throughout incident on the January 22, 2015; (b) Ms. Wilson was not … "the victim of disparate treatment" and that "… the Company had a proper basis to discipline and demote [her];"and (c) the Company's decision to suspend and demote Ms. Wilson for her conduct and performance problems during the January 22, 2015 incident was for "just cause."

For the reasons that are explained more fully below Ms. Wilson cannot show that there are any material issues of fact in dispute in this case, particularly in view of the findings that were made in Ms. Wilson's prior proceedings and the admissions she made during her deposition testimony in this proceeding.  The Defendants respectfully submit that they are entitled to summary judgment under these circumstances and, accordingly, respectfully request that the Court grant them judgment and issue an order dismissing Ms. Wilson's disparate treatment, retaliation and hostile work environment claims in their entirety at this time.

7

III.     **ARGUMENT**

**POINT I**

**PLAINTIFF CANNOT ESTABLISH HER DISPARATE
TREATMENT AND RETALIATION CLAIMS**

Examination of Ms. Wilson's disparate treatment and retaliation claims, in light of the governing legal standards and undisputed facts surrounding Ms. Wilson's employment during the relevant time period, confirms that Ms. Wilson cannot meet her initial burden of proof to establish a *prima facie* case of disparate treatment or retaliation.[3]   Furthermore, even if Ms. Wilson was somehow able to establish a *prima facie* case of disparate treatment or retaliation, she cannot meet her ultimate burden of proof - i.e., show that Niagara Mohawk articulated legitimate, non-discriminatory reasons for each of the employment actions with respect to Ms. Wilson were a pretext for unlawful discrimination or retaliation.[4]

---

[3] To establish a *prima facie* case of gender or race discrimination, an employee must show that: (a) She is a member of a protected class; (b) she was performing her job in a satisfactory manner; (c) she was subjected to an adverse employment action; and (d) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See DiFillippo v. Special Metals Corp.*, 2016 U.S. Dist. LEXIS 119771, *10 (N.D.N.Y. 2016) (*citing Fahrenkrug v. Verizon Servs. Corp.*, 652 Fed. Appx. 54 (2d Cir. 2016); *see also Serrano v. New York State Dep't of Envtl. Conservation*, 2017 U.S. Dist. LEXIS 47527, *13 (N.D.N.Y 2017) (citations omitted).   To establish a *prima facie* case of retaliation, an employee must similarly show that:  (a) She participated in a protected activity with the defendant's knowledge; (b) she suffered an adverse employment action; and (c) there is a sufficient causal connection between the protected activity and the adverse employment action. *See Gordon v. NYC Bd. of Educ.*, 232 F.3d 111, 113 (2d Cir. 2000).

[4] It is well-established that an employer can rebut the *prima facie* case of discrimination or retaliation merely by articulating a legitimate, non-discriminatory/non-retaliatory reason for the alleged adverse employment action. *DiFillippo,* 2016 Dist. LEXIS 119771 at *11-12. The employee then bears the ultimate burden of establishing that the reason proffered by the employer was a "pretext" for unlawful discrimination or retaliation; to do so, the employee must present sufficient and competent evidence demonstrating that (a) the employer's proffered reason for the adverse employment action was false; **and** (b) the real reason was unlawful discrimination or retaliation. *Id.* at *12-13.

A.    **Besides the February 2015 Suspension and Demotion, the Employment Actions Complained by Ms. Wilson Do Not Constitute Adverse Employment Actions as a Matter of Law**

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006).  To be adverse, an employment action must be one which is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.*  "[M]aterially adverse changes include a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Id.*; *see also Miller v. Praxair, Inc.*, 408 Fed. Appx. 408, 410 (2d Cir. 2010).

For purposes of this motion only, Defendants assume that Plaintiff's suspension and demotion in February 2015 constitute an adverse employment action.  Defendants, however, respectfully submits that Plaintiff cannot show that she suffered any other employment action(s) that could be deemed materially adverse for purposes of her discrimination and retaliation claims. While Ms. Wilson's complaint contains various general and conclusory assertions regarding alleged "denials of training," "disparate working conditions," and "job assignment discrimination" (Complaint ¶¶ 69, 75, 86, 92, 104, and 110), there is no evidence in the record to support any of these allegations.

In fact, the record evidence shows the following: (a) Ms. Wilson was trained and tested on required gas procedures and functions (Wilson 42); (b) she attended and completed all of the Gas Mechanic training schools (Pl. Tr. 42-43); (c) she progressed through the Gas Mechanic job series in due course (Pl. Tr. 42-43); (d) she was awarded each of the promotional opportunities on which she bid and for which she was eligible (Pl. Tr. 49-51); (e) she achieved the most senior and the highest paying position within the bargaining unit – i.e., Chief Gas Mechanic (Pl. Tr. 52; 111-112); (f) throughout her employment with the Company, she "consistently received

9

satisfactory performance evaluations through the course of [her] employment." (Pl. Tr. 112); and (g) the terms and conditions of Ms. Wilson's employment are governed by the collective bargaining agreement and she was, at all times, compensated pursuant to this agreement. (Pl. Tr. 50). In light of the above, Ms. Wilson cannot show that (apart from the February 2015 discipline), she was subject to an "adverse employment action" that would support her discrimination and/or retaliation claims.

**B.** **Arbitrator's Decision Finding "Just Cause" for Ms. Wilson's February 2015 Discipline Prevents Ms. Wilson from Establishing Even a Prima Facie case of Either Discrimination or Retaliation**

To establish a *prima facie* case of discrimination, Ms. Wilson must show a causal connection between her protected status and her February 2015 discipline. *DiFillippo*, 2016 U.S. Dist. LEXIS at *25. Although this is normally a low threshold, Ms. Wilson's burden is enhanced because an independent arbitrator found - after an evidentiary hearing - that Ms. Wilson was disciplined for "just cause." *See Collins v. City Trans. Auth.*, 305 F.3d 113, 116 (2d Cir. 2002); *DiFillipo v. Special Metals Corp.*, 2016 U.S. Dist. LEXIS 119771, at * 34-35 (N.D.N.Y. Sept. 6, 2016) (Applying *Collins* where the arbitrator's findings made after three days of testimony were "highly probative of the absence of discriminatory intent," and finding that the plaintiff failed to meet her burden of establishing that the proffered reasons for her demotion and termination were pretextual, ultimately granting summary judgment in favor of the defendant on the gender discrimination claims.). In such a case "plaintiff, to survive a motion for summary judgment, must present **strong evidence** that the [arbitrator's] decision was wrong as a matter of fact – e.g., new evidence not before the tribunal – or that the impartiality of the proceeding was somehow compromised." *See id.* at 119 (emphasis added); *see also Norris v. N.Y. City Housing Auth.*, 2004 U.S. Dist. LEXIS 8619, *31-32 (S.D.N.Y. May 14, 2014) ("When [an arbitrator's] independent decision is not impeachable by reason of factual error or impartiality, it can

overcome any inference that a plaintiff's termination was the result of discrimination or retaliation, and therefore prevent the plaintiff from meeting even the low threshold of making out a prima facie case of a Title VII violation.")

As stated above, Ms. Wilson challenged her February 2015 discipline in arbitration, during which she was represented by her Union. An independent Arbitrator conducted three days of hearings and heard testimony from several witnesses, including testimony from Ms. Wilson. Following those proceedings, the Arbitrator concluded that there was "just cause" for suspending and demoting Ms. Wilson.

The Arbitrator's conclusion was based on evidence presented by both parties in the arbitration hearing, and it was explained in a thorough, 36-page opinion that reviewed the chronology of events and assessed Ms. Wilson's credibility in light of her testimony. (Attorney Aff. ¶4, Ex. B). Because the Arbitrator's decision was "based on substantial evidence of an undisputedly independent, neutral, and unbiased adjudicator," it is "highly probative of the absence of discriminatory intent . . ." *Collins*, 305 F.3d at 119.

Ms. Wilson does not dispute that the impartiality of her arbitration proceeding was somehow compromised. Ms. Wilson also has not presented any new evidence to offset the force of the Arbitrator's conclusions. In other words, Ms. Wilson has failed to establish a causal link between her race, gender, or protected activity and her February 2015 termination. Accordingly, there is insufficient evidence in the record to support even a *prima facie* claim of discrimination under Title VII. *DiFillippo*, 2016 U.S. Dist. LEXIS 119771 at *24; *Kugler v. Donahoe*, 2014 U.S. Dist. LEXIS 34588, *33-34 (E.D.N.Y. Mar. 17, 2014) ("Further undermining [plaintiff's] attempt to make out a prima facie case of retaliation is the fact that a neutral arbitrator rejected [plaintiff's] claim that her termination was discriminatory."); *Redd v. New York State Div. of*

*Parole*, 923 F. Supp. 2d 371, 384-385 (E.D.N.Y. 2012) (granting defendant's motion for summary judgment where arbitrator found that plaintiff was discharged for cause and plaintiff failed to provide "strong evidence" of discrimination in support of her causation element of her prima facie case).

In light of the governing legal standards, Ms. Wilson cannot establish even a *prima facie* case of discrimination or retaliation under the standards applied by this Court and others following the Second Circuit's decision in *Collins*. *DeFillipo*, 2016 U.S. Dist. LEXIS 119771 (N.D.N.Y. 2016).

**C.   The Defendants' Proffered Legitimate Nondiscriminatory Reasons for the February 2015 Discipline**

Even if Ms. Wilson could somehow establish a *prima facie* case of discrimination or retaliation, her claims still fail because Niagara Mohawk proffered legitimate, non-discriminatory reasons for issuing the February 2015 discipline to Ms. Wilson, and Ms. Wilson cannot demonstrate pretext. The evidence in the record shows that the Company disciplined Ms. Wilson because she committed a serious safety violation on January 22, 2015, and failed to respond in a manner expected of a Chief Gas Mechanic when she was notified of this infraction by her coworker. (Buck Aff. ¶¶11-13; Ackermann Aff. ¶¶ 14-16; Krogh Aff. ¶¶ 33-44). Specifically, Ms. Wilson failed to perform a circle of safety – in violation of the Company's Safe Operations Policy - immediately before pulling her vehicle out of the garage. (Buck Aff. ¶ 11; Ackermann Aff. ¶¶ 10, 14; Krogh Aff. ¶¶ 38, 41). As a result, two of Ms. Wilson's coworkers were still in the back of her truck and had to move quickly out of the way to avoid injury. (Buck Aff. ¶ 8; Ackermann Aff. ¶ 14; Krogh Aff. ¶¶ 36-39).

It is well established that disciplining (or even discharging) an employee for violating a company policy constitutes legitimate, non-discriminatory reason for discipline and/or discharge.

See *Anderson v. Nat'l Grid, PLC*, 93 F.Supp.3d 120, 142 (E.D.N.Y. Mar. 25, 2015) ("The foregoing, undisputed facts establish that plaintiff had violated National Grid's Standards of Conduct. ... Accordingly, the Court concludes that defendants have set forth a legitimate, nondiscriminatory reason for their action."); *see also Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 65 (2d Cir. 1997) (Court recognized that a plaintiff's violation of company policy is a legitimate, nondiscriminatory reason for terminating plaintiff's employment); *Douglas v. Hip Centralized Lab. Servs.*, Inc., 2005 U.S. Dist. LEXIS 8753, *17-19 (E.D.N.Y. Apr. 29, 2005) (Defendant's belief that plaintiff violated company policy was found to constitute a legitimate, nondiscriminatory reason for terminating plaintiff's employment).

More importantly, the Company's reason/justification for disciplining Ms. Wilson has already been examined by a neutral arbitrator, who concluded that the Company had "just cause" to discipline Ms. Wilson. It has been recognized that where an "impartial hearing officer found the evidence solid enough to find [the plaintiff] guilty on all ... charges brought against her after a hearing," "[i]t is beyond question that the defendant has done more than merely articulate a legitimate, nondiscriminatory reason for terminating [the plaintiff's] employment"). *Norris*, 2004 U.S. Dist. LEXIS 8619 at *50; *DiFillippo*, 2016 Dist. LEXIS 119771 at 24. Based on the above, Niagara Mohawk has clearly satisfied its burden of providing a legitimate, not-discriminatory reason for disciplining Ms. Wilson in February 2016.

**D.**   **Ms. Wilson Cannot Show Pretext**

To defeat the Defendants' motion for summary judgment, Ms. Wilson must show that the Company's stated reason for her discipline was false and that her gender, race, or her engaging in protected activity was the real reason for the adverse action. *See DiFillippo*, 2016 U.S. Dist. LEXIS 119771 at *12. As fully explained below, Ms. Wilson cannot meet this burden of proof.

1.    **Ms. Wilson cannot show that the stated reasons for her suspension and demotion were false**

Ms. Wilson cannot show that the reasons for her suspension and demotion were false. First, as explained above, after a three day evidentiary hearing, a neutral arbitrator found that the Company had "just cause" to suspend and demote Ms. Wilson.  (LaBerge Aff. ¶4, Ex. C). Similarly, the EEOC fully investigated Ms. Wilson's claims of race and gender discrimination and retaliation and dismissed Ms. Wilson's case, after it was fully briefed by the parties, stating that: "[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained establishes the violations of the statutes." (LaBerge Aff. ¶5, Ex. C).

Second, during her investigatory interview, Ms. Wilson admitted that she did not performed a "circle of safety" inspection before leaving the Schenectady garage on January 22, 2015. (Buck Aff. ¶ 11; Krogh Aff. ¶ 41). Ms. Wilson also stated during her interview that when Mr. Haley came out of the garage, he told her that she "almost killed two people" inside the garage. (Buck Aff. ¶ 12; Krogh Aff. ¶ 43). Ms. Wilson further acknowledged that Mr. Haley advised her that she should go back into the garage and speak to these employees. (Buck Aff. ¶ 13; Krogh Aff. ¶ 43).  Ms. Wilson admitted during her interview that she did not follow Mr. Haley's advice, but decided instead to drive out to the jobsite. (Buck Aff. ¶ 13; Krogh Aff. ¶ 43). Ms. Wilson stated that she did not return to the garage to check on the other employees because she believed she would lose her temper with the employees and scream at them. (Buck Aff. ¶ 13; Krogh Aff. ¶ 43).  Ms. Wilson also stated during her interview that she did not feel that she had to be a "babysitter." (Buck Aff. ¶ 13; Krogh Aff. ¶ 43). Ms. Wilson's own admissions (which were consistent with the reports of other employees involved in January 22, 2015 incident) clearly show that Ms. Wilson committed a serious safety infraction in violation of the Company's Safety Operations Policy.  Furthermore, in light of Ms. Wilson's admissions in how

she handled the January 22, 2015 incident, the Company was justified in concluding that Ms. Wilson was not fit to serve in a quasi-supervisory, leadership position at that time.

Based on the above, Ms. Wilson cannot show that the reasons for her suspension and demotion were false.

### 2.    Ms. Wilson cannot present any competent evidence that her gender, race, or alleged protected conduct was the reason for her discipline

Ms. Wilson similarly cannot present any evidence in this proceeding that is sufficient to show that her gender, race or alleged protected activities had anything to do with her suspension and demotion.

First, at her deposition, Ms. Wilson admitted that while employed with the Company, she had never heard anyone using racially derogatory or offensive comments towards her. (Pl. Tr. 139-140; 187-188). Ms. Wilson similarly admitted that while employed with the Company, she had never heard anyone use racially derogatory or offensive comments towards any other employee of the Company. (Pl. Tr. 139-140; 187-188).[5] The only other comments that Ms. Wilson reports in her Complaint (and during her deposition) are that she was allegedly told "to kill [her]self" and "go back to where [s]he came from." (Complaint ¶26). During her deposition, Ms. Wilson stated that these comments were made to her on one occasion by her coworker, Mike Cordi, before January 2014. (Pl. Tr. 181-183). This is clearly not sufficient to establish race

---

[5] In Paragraph 26 of her Complaint, Ms. Wilson alleges that: Plaintiff's supervisor Pat White has a history of making racially charged discriminatory comments. For example, Mr. White has made it known that it is his goal to "get rid . . . [of] all the niggers in Schenectady." Mr. White has also been overheard telling two African American employees wearing white suits at work that "this is the closest [they] will be to being white." During her deposition, Ms. Wilson admitted that she has never heard Mr. White to make these comments and struggled to explain the basis for these egregious allegations. (Pl. Tr. 139-140; 187-188). Similarly, in Paragraph 27 of her Complaint, Ms. Wilson alleges that "one of the Defendant's most blatant displays of racial discrimination occurred when Plaintiff's co-workers distributed cartoon drawings of "Aunt Jemima," a stereotypical depiction of an African American woman, in reference to Plaintiff's appearance. Again, when asked about these allegations at her deposition, Plaintiff admitted that she had never seen this alleged "Aunt Jemima" cartoon. (Pl. Tr. 178).

and/or gender discrimination claims. "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.' Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *See Alfano v. Costello*, 294 F.3d 365 (2d Cir. 2002) (citations omitted) (Finding that twelve incidents cited by the plaintiff, "taken together, were insufficient as a matter of law to meet the threshold of severity or pervasiveness required for a hostile work environment claim" and that the defendant was entitled to a judgment as a matter of law.)

Second, the record confirms that Mr. White is the only supervisor whom Ms. Wilson accuses of gender and race discrimination and retaliation. During her deposition, Ms. Wilson testified she did not have any problems or issues with any of her other supervisors and/or upper management. (Pl Tr. 25; 104-106). It is undisputed however, that Mr. White neither participated in, nor was he consulted regarding the decision to discipline Ms. Wilson. (Buck Aff. ¶ 17; Ackermann Aff. ¶ 16).

Third, Mr. Buck (Director of Gas Operations) and Mr. Ackermann (Manager of Gas Construction) were part of senior management group that made the decision to suspend and demote Ms. Wilson.  (Buck Aff. ¶ 14-23; Ackermann Aff. ¶ 15-17).  Both, Mr. Buck and Mr. Ackermann supported and approved Ms. Wilson's promotion to the Chief Gas Mechanic position, just one year before when she first became eligible to bid for the Chief Gas Mechanic position. (Buck Aff. ¶ 7; Ackermann Aff. ¶ 5).   This undisputed fact further undermines Ms. Wilson's attempt to impute any invidious motive to these individuals. *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 137 (2d Cir. 2000), *cert. denied*, 530 U.S. 1261 (2000) (internal citations omitted) (recognizing that "[w]hen the same actor hires a person already within a protected class,

and then later fires that same person, 'it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire.'").

Finally, the record shows that other members of the senior management group responsible for the decision to suspend and demote Ms. Wilson were unaware of any issue Ms. Wilson may have previously had with some of her co-workers or one of her front-line supervisors. (Sweet Zavaglia Aff. ¶ 12; Ackermann Aff. ¶ 22).

### 3.   Ms. Wilson is not "similarly situated" with the employees involved in the December 2010 incident

Ms. Wilson's last argument – that she was the victim of disparate treatment because others were not disciplined for violations of the Safe Operations Policy – is also unavailing. First and foremost, Ms. Wilson cannot show that she is "similarly situated" to the employees to whom she seeks to compare herself. This Court and others in the Second Circuit have held repeatedly that employees are not proper comparators for purposes of the discrimination analysis unless it is shown that they are similarly situated to the plaintiff "in all material respects." *Shumway v. United Parcel Serv.*, 118 F.3d at 64-65; *see also*, *Ruiz v. County of Rockland*, 609 F.3d 486, 494 (2d Cir. 2010).

During the arbitration hearing, Ms. Wilson argued that none of the employees involved in the December 2010 incident were disciplined and that this showed disparate treatment.  The Arbitrator, however, found this argument unpersuasive.  (LaBerge Aff. ¶4, Ex. B).  Courts have also recognized that where a policy has been subsequently modified, changed, or implemented, the plaintiff cannot consider those subject to a different version of the policy as similarly situated comparators. *See Shannon v. Nicholson*, 2006 U.S. Dist. LEXIS 14253 (Finding that where a policy was modified by the time it was applied to the plaintiff, "the two were plainly not subject to the same workplace standard and therefore not similarly situated for the purposes of a

disparate treatment claim"). The Company presented evidence demonstrating that the Safe Operations Policy was not in place until April 2013 or nearly three years after the December 2010 incident. (Ackermann Aff. ¶ 9, Ex. I). In other words, in December 2010 there was no specific policy requiring Gas Mechanics to perform a "circle of safety inspection." Clearly, the Company could not have disciplined the employees pursuant to a policy which did not exist. Since Ms. Wilson cannot show that the employees in the December 2010 incident were subject to the same rules and procedures, she cannot show that they were "similarly situated" to her "in all material respects."[6]

## POINT II

## PLAINTIFF CANNOT ESTABLISH AN ACTIONABLE HOSTILE WORK ENVIRONMENT CLAIM

Ms. Wilson alleges that while in the employ of the Company she was subject to hostile work environment.   A hostile work environment claim requires a showing (1) that the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and (2) that a specific basis exists for imputing the objectionable conduct to the employer. *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002).

---

[6] The courts in this Circuit recognize that "employees are not similarly situated merely because their conduct might be analogized; rather, in order to be similarly situated, other employees … must have engaged in conduct similar to the plaintiff's without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it." *Francis v. Runyon*, 928 F. Supp. 195, 203 (E.D.N.Y. 1996) (*internal quotations omitted*); *see also, Droutman v. NY Blood Ctr., Inc.,* 2005 U.S. Dist LEXIS 42951, *30 (E.D.N.Y. 2005). To satisfy this standard, the plaintiff must demonstrate that the comparators "were subject to the same workplace standards;" as the plaintiff. *Shannon v. Nicholson*, 2006 U.S. Dist. LEXIS 14253, *14 (S.D.N.Y. 2006) (*citing Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000). In *Shannon*, the court found that "the two were plainly not subject to the same workplace standard and therefore not similarly situated for the purposes of a disparate treatment claim" where the policy at issue was modified by the time it applied to the plaintiff. *Shannon*, 2006 U.S. Dist. LEXIS 14253 at *14.

### A. **Ms. Wilson Cannot Show that the Complained of Conduct Was Sufficiently Sever or Pervasive to Alter the Conditions of Her Employment**

With respect to the first element, Plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered. *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999). This test has objective and subjective elements: the misconduct shown must be "severe or pervasive enough to create an objectively hostile or abusive work environment," and the victim must also subjectively perceive that environment to be abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). As a general rule, incidents must be more than "episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997). It is also well-settled that to succeed on a gender or racial harassment claim, the conduct of which the plaintiff complains must be ***because of*** inclusion in a protected class. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998).

During her testimony, Ms. Wilson admitted that while employed with the Company, she has never heard anyone using racially derogatory or offensive comments towards her. (Pl. Tr. 139-140; 187-188). Similarly, she admitted that she has never heard anyone use racially derogatory or offensive comments toward any other employee of the Company. *Id.* Ms. Wilson's allegations regarding gender-based comments or conduct are likewise lacking in details of specificity and frequency which are all necessary to make out an actionable hostile work environment claim. At most, Ms. Wilson alleges that her coworker, William Warner, in the summer of 2017 allegedly said to Ms. Wilson "It was nice to see Sandra, the bitch, put away." (Pl. Tr. 147-149). Even though Ms. Wilson alleges that her subordinates referred to her as a

19

"bitch," when asked for names of these subordinates, frequency, time and place of these alleged statements, Ms. Wilson could not provide any details. (Pl. Tr. 150-151).

Assuming arguendo that Ms. Wilson was in fact referred to as a "bitch" by her co-workers, this still would not be sufficient to establish gender based hostile work environment claim. *Mealus v. Nirvana Spring Water N.Y. Inc.*, 2014 U.S. Dist. LEXIS 128968, *20 (N.D.N.Y. 2014) ("It has been repeatedly held that 'ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing' are not objectively severe enough to establish a hostile work environment."); *Sardina v. United Parcel Service, Inc.*, 254 Fed. Appx. 108, 110 (2d Cir. 2007) ("[A] few off color comments including references to 'office bitches,'" among other sexually suggestive comments made by co-workers did not rise to the level of creating a hostile work environment); *Matthew v. Corning Inc.*, 77 F.Supp.3d 275, 292-94 (W.D.N.Y. 2014) (Plaintiff's allegations that she was referred to as the "cleaning bitch" standing alone, could not rise to the level of a hostile work environment claim).

Moreover, to establish a hostile work environment claim, the plaintiff must also show that the conduct complained of was "extreme" or "pervasive." It is well established that isolated acts, unless they are very severe, cannot satisfy the threshold of severity and pervasiveness as a matter of law. *Brennan v. Metro Opera, Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999). Where a hostile work environment claim is based upon racially-motivated comments, there must be a "stream of racially offensive comments," including a "veritable barrage of racial epithets." *Fleming v. MaxMara*, USA, Inc., 371 Fed. Appx. 115, 119 (2d Cir. 2010) (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000); *see also Mathirampuzha v. Potter*, 548 F.3d 70, 79 (2d Cir. 2008); *see also Serrano v. New York State Dep't of Envtl. Conservation*, 2017 U.S. Dist. LEXIS 47527, *10-11 (N.D.N.Y. 2017) ("For 'racist comments,

slurs, and jokes' to be actionable as a hostile work environment, there generally 'must be more than a few isolated incidents of racial enmity.'...Rather 'there must be a steady barrage of opprobrious racist comments.'") (internal citations omitted).

Evaluating Plaintiff's evidence in the light of recent case law, it is clear that it falls well below the threshold. In this Circuit, hostile work environment claims have been dismissed for insufficiency of evidence even though, compared to what was adduced here, they involved a greater number of incidents and were more severe and had more pronounced discriminatory overtones. See *Holt v. Roadway Package Sys., Inc.*, 506 F. Supp. 2d 194, 203-05 (W.D.N.Y. 2007) (granting summary judgment where the terms "nigger-rigged," "boy" and "porch monkey" were used on separate and isolated occasions); *Brown v. Middaugh*, 41 F. Supp. 2d 172, 187-88 (N.D.N.Y. 1999) (holding that references to plaintiff as a "nigger," "lazy nigger," "piece of shit nigger" and "good for nothing nigger," although "despicable, odious and offensive," did not "constitute discriminatory behavior that is sufficiently severe or pervasive such that plaintiffs hostile work environment claim can survive summary judgment.").

Finally, Ms. Wilson does not allege that any of the alleged harassing statements/conduct "unreasonably interfered with her work performance." In fact, Ms. Wilson testified that: (a) she has "consistently received satisfactory performance evaluations through the course of [her] employment." (Pl. Tr. 112); (b) she successfully completed various schools and progressed from Gas Mechanic Helper to Gas Mechanic A, Gas Mechanic B, and Gas Mechanic C, without any issues (Pl. Tr. 42-43); (c) she became Chief Gas Mechanic in Schenectady, New York in January 2014 (Pl. Tr. 49); (d) this was the first time Ms. Wilson bid into this position and she was awarded the position right away (Pl. Tr. 49-51); (e) the Chief Gas Mechanic position is the most senior position in the bargaining unit and is also the highest paid position. (Pl. Tr. 52; 111-112);

(f) after her demotion she was restored to the Chief Gas Mechanic position as soon as there was a vacancy (Buck Aff. ¶¶ 24-25; Krough Aff. ¶¶ 55-56). Based on the above, the alleged harassing conduct about which Plaintiff complains here simply does not, as a matter of law, rise to the level of creating a hostile work environment.

## B. There Is No Basis to Impute the Alleged Harassing Conduct to the Company

Ms. Wilson's hostile work environment allegations also fail for an additional reason – there is no legal or factual basis for imputing any of the alleged conduct by Ms. Wilson's co-workers, peers or subordinates to her employer, Niagara Mohawk.

First, Ms. Wilson's deposition testimony makes clear that much of the alleged conduct referenced in her Complaint occurred, if at all, more than four years prior to the commencement of this action. Second, much of the complained about conduct – both that outside the applicable limitation and that alleged to have occurred more recently – was engaged in, if at all, by Ms. Wilson's co-workers, peers, or subordinates.  There is no basis for imputing any of this conduct to Ms. Wilson's employer and the conduct.

Third, as explained in the Affidavits submitted in support of the Defendants' motion, the Company maintains policies prohibiting discrimination, harassment, retaliation, bullying, and violence in the workplace. (Ackermann Aff. ¶13, Ex. D, E, and F). Employees in the Schenectady facility, including Ms. Wilson, were trained on these policies on several occasions, including the Summer of 2014, during the Annual Policy Review session, as well as during June 24, 2014 training conducted by Ms. Ireland and Ms. Knickerbocker. (Ackermann Aff. ¶¶11-13, Ex. A-F). All of these policies are additionally accessible to Ms. Wilson (and other employees) via the Company Infonet and bulletin boards. (Ackermann Aff. ¶13). During her deposition, Ms. Wilson admitted that she knows how to file a complaint with the Company's Human Resources

or Ethics Department. (Pl. Tr. 93-95; 103). Even though Ms. Wilson is aware of these policies, she has not pursued the available avenues under those policies to complain about any of the alleged conduct set forth in her Complaint.

Finally, the record shows that during the time period involved in this case, Ms. Wilson's supervisor and manager regularly asked Ms. Wilson how "things were going" and she always said "fine" and she never brought any issue or problem to their attention. (Piel Aff. ¶ 12). Based on the above, there is no basis for imputing any of the complained of conduct to the Company.

## IV.   **CONCLUSION**

For all of the reasons set forth above, the Defendants respectfully submit that they are entitled to summary judgment pursuant to Fed. R. Civ. P. 56 at this time.   The Defendants request that the Court grant this motion and issue an order dismissing the Complaint in its entirety and granting such other and further relief as the Court may deem to be just and proper.

Dated:  April 2, 2018

BOND, SCHOENECK & KING, PLLC

By:    /s/ Robert A. LaBerge
Robert A. LaBerge (Bar Roll No. 501096)
Kseniya Premo (Bar Roll No. 513773)
Attorneys for Defendants
National Grid USA Service Company, Inc.
and Niagara Mohawk Power Corporation
Office and Post Office Address
One Lincoln Center
Syracuse, New York 13202-1355
Telephone:  (315) 218-8000
Facsimile:  (315) 218-8100
E-mail:    rlaberge@bsk.com
kpremo@bsk.com

TO:    John J. Hoke, Esq.
Smith Hoke, PLLC
16 Wade Road
Latham, NY 12110
Telephone:  (518) 489-5600
Email:  jhoke@smithhoke.com

3129596